NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WILLIE GREEN,

    *Plaintiff*,

v.

712 BROADWAY, LLC, *et al*,

    *Defendants*.

Civil Action No. 17-991

**OPINION**

**John Michael Vazquez, U.S.D.J.**

## I. INTRODUCTION

Plaintiff Willie Green briefly worked as a building superintendent at an apartment complex in Edison, New Jersey. Following his termination from that position, Plaintiff instituted the present matter, alleging claims related to wages, child support, and landlord-tenant law. Defendants 712 Broadway, LLC; Ster Developers, LLC d/b/a Spring Hill Properties; and David Kahane (collectively "Defendants") move to dismiss Plaintiff's Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 17. Plaintiff submitted a brief in opposition, D.E. 19, to which Defendants replied. D.E. 23.[1] The Court reviewed the submissions in support and in

---

[1] In this Opinion, Defendants' motion to dismiss (D.E. 17) will be referred to as "Def. Brf." Plaintiff's brief in opposition (D.E. 19) will be referred to as "Pl. Opp." Defendants' reply brief (D.E. 23) will be referred to as "Def. Rep."

opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion is **GRANTED**.

## II. FACTS AND PROCEDURAL HISTORY

### A. Factual History

Plaintiff Green lives in New Jersey. FAC ¶¶ 4-5; D.E. 16. Defendant 712 Broadway, LLC ("712 Broadway") is New Jersey corporation that operates the apartment complex of Westwood Manors Apartments ("Westwood"). *Id.* ¶ 7. Defendant Ster Developers, LLC ("Ster Developers") is a corporation that hires and employs maintenance personnel to perform home repair and commercial construction. *Id.* ¶ 8. 712 Broadway uses Ster Developers to fulfill Westwood's operational maintenance needs. *Id.* ¶ 9. Defendant David Kahane is an owner, principal, and general partner of 712 Broadway. In that capacity, he allegedly oversees the work of 712 Broadway employees, including their payment and termination. *Id.* ¶ 11. Kahane is also a managing member and registered agent for Ster Developers. *Id.* ¶ 12. The FAC alleges that "Defendants comprise a single, joint and/or integrated business that share[s] common overlapping management, resources, operations, financial controls" and are based at the same Edison, New Jersey address. *Id.* ¶ 6. Further, the FAC alleges that 712 Broadway employed Plaintiff, while Ster Developers paid Plaintiff. *Id.* ¶¶ 7,8.

In July 2016, Defendants hired Plaintiff to perform general maintenance at Westwood. *Id.* ¶¶ 18-20. As part of their employment agreement, Defendants assigned Plaintiff an apartment to reside in at Westwood. *Id.* ¶ 22. Plaintiff's employment duties consisted of making repairs in apartments, fielding questions from tenants and management, performing light construction work, and remodeling areas of the apartment complex. *Id.* ¶ 23. All of Plaintiff's employment duties involved his performing physical or manual labor. *Id.* ¶ 24.

2

For this work, Defendants paid Plaintiff a biweekly flat rate of $386.58. *Id.* ¶¶ 26, 28. Despite often working fifty to sixty hours per week, Defendants did not compensate Plaintiff for overtime hours worked. *Id.* ¶ 6. Defendants also did not track or maintain records of the hours that Plaintiff worked. *Id.* ¶ 25.

While working at Westwood, Plaintiff alleges that he "repeatedly requested information about how his compensation was being allocated, whether taxes were being remitted to the government, and for a typical document showing itemizations." *Id.* ¶ 28. Defendants never provided this information. *Id.* ¶ 28. Plaintiff also raised three specific concerns with Defendants' management about his employment. First, he expressed opposition to Defendants' demand that Plaintiff perform professional work, for which he did not have the requisite licenses, such as plumbing and electric repairs. *Id.* ¶ 29(1). Second, Plaintiff raised concerns over the unsafe environment that tenants were living in due to certain conditions, such as mold. *Id.* ¶ 29(2). Third, Plaintiff complained that he was not receiving overtime compensation. *Id.* ¶ 29)3).

In addition to these concerns, Plaintiff allegedly told Defendants' management that he needed documentation, itemization, and evidence of his earnings for an ongoing child support dispute. *Id.* ¶ 30. To that end, Plaintiff informed management that he needed them to remit part of his salary to the court to fulfill Plaintiff's child support obligations. *Id.* Defendants refused to provide Plaintiff with the requested information or to remit part of his salary for child support. Plaintiff indicates that Defendants failed to comply with the New Jersey Child Support Act ("NJCSA"), which required Defendants to report Plaintiff's employment within twenty days of his hiring. *Id.* ¶ 31.

Defendants terminated Plaintiff on January 11, 2017. *Id.* ¶ 33. Plaintiff claims that his termination was in retaliation for the concerns he expressed to management. *Id.* In addition to his

3

termination, Plaintiff claims that Defendants' failure to comply with the NJSCA caused him to attend multiple court appearances, receive court sanctions, and for a short time period be incarcerated. *Id.* ¶ 32. Finally, Plaintiff adds that his removal from the apartment violated New Jersey landlord-tenant laws.

### B. Procedural History

On February 14, 2017, Plaintiff filed a Complaint in this court. D.E. 1. Defendants filed a motion to dismiss the Complaint on August 25, 2017. D.E. 11. Rather than oppose Defendants' motion, Plaintiff filed the FAC on September 13, 2017. D.E. 16. The Amended Complaint sets forth six counts: violations of the Fair Labor Standards Act (Count I); violations of the New Jersey Wage and Hour Law(s) (Count II); violations of the New Jersey Conscientious Employee Protection Law (Count III); claims of negligence and negligence *per se* (Count IV); violations of the New Jersey Landlord Reprisal Law, N.J.S.A. 2A:42-10.10-10.14 (Count V); and violations of the New Jersey Tenant Landlord Law(s) and the Anti-Eviction Act (Count VI). Defendants' motion to dismiss followed.

### III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has

4

acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## IV. LAW AND ANALYSIS

Defendants argue that Plaintiff's FAC should be dismissed for several reasons. First, Defendants argue that the FAC impermissibly relies on group pleadings. Def. Brf. at 5-6. Second, Defendants argue that the FAC does not allege sufficient facts to hold Kahane liable for any unlawful or retaliatory act. *Id.* at 7-8. Third, Defendants argue that the FAC improperly pleads the negligence and negligence *per se* counts. *Id.* at 8-10. Fourth, and finally, Defendants argue that the FAC fails to plausibly plead a claim of retaliatory eviction. *Id.* at 11.

### A. Group Pleadings

Defendants argue that the FAC impermissibly alleges that Defendants, as a whole, acted impermissibly. *Id.* at 5. Such group pleadings, Defendants assert, do not meet the requirements of Federal Rule of Civil Procedure 8(a)(2). *Id.* In response, Plaintiff argues that the FAC seeks to

5

hold all Defendants jointly and severally liable via a FLSA "joint employment" relationship. Pl. Opp. at 10-11.

Courts within this district have not permitted complaints with group pleadings to go forward. *Sheeran v. Blyth Shipholding S.A.*, No. CV 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (dismissing the complaint because the "Plaintiffs Complaint fails to separate out the liability for each defendant"); *Ingris v. Borough of Caldwell*, No. CIV.A. 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading."). In other words, group pleadings are improper.

On the other hand, the FLSA does have a broad definition of employer.[2] By way of background, the FLSA provides that all employees must be paid a minimum hourly wage unless one of the Act's exceptions applies. 29 U.S.C. § 206(a). Employees who work more than forty hours per week must be compensated for the extra hours "at a rate not less than one and one-half times" the employee's regular rate. *Id.* at § 207(a)(1). "Thus, to recover overtime compensation under the FLSA, 'an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)). A plaintiff who brings a successful FLSA claim may "recover the corpus of the unpaid compensation along with equivalent liquidated damages,

---

[2] The Court notes that Plaintiff's opposition focuses on the definition of employer under the FLSA. Plaintiff, however, fails to address Defendants' group pleading argument as to the remaining counts. Because the Court is giving Plaintiff leave to file an amended complaint, Plaintiff should be aware that he will have to also sufficiently plead allegations concerning all counts.

costs, and attorney's fees. *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147–48 (3d Cir. 2014) (citing 29 U.S.C. § 216(b)).

Here, the inquiry is whether the FAC sufficiently alleges an actionable employer-employee relationship. *See id.* The FLSA defines an "employer" as any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d). An "employee" is defined as "any individual employed by an employer." *Id.* § 203(e)(1). To "employ" is defined as "to suffer or permit to work." *Id.* § 203(g). The Third Circuit has recognized the broad scope of this definition:

> [Whether] someone is an employee under the FLSA, "economic reality rather than technical concepts is to be the test of employment." Under this theory, the FLSA defines employer "expansively," and with "striking breadth." The Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is "the broadest definition that has ever been included in any one act."

*Real Estate Mortg. Network*, 748 F.3d at 148 (quoting *In re Enterprise Rent–A–Car Wage & Hour Emp't Prac. Litig.*, 683 F.3d 462, 467–68 (3d Cir. 2012) (citations omitted)).

Federal regulations indicate that FLSA allows for "joint employment" liability to exist when "employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b). A "single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA]." 29 C.F.R. § 791.2(a).

The Third Circuit uses the "*Enterprise* test" to determine whether a "joint employment" relationship exists. *Real Estate Mortg. Network*, 748 F.3d at 149. Under this test, a court considers the following, non-exhaustive, factors:

7

> (1) the alleged employer's authority to hire and fire the relevant employees;
>
> (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment;
>
> (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and
>
> (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*Id.* (quoting *In re Enterprise,* 683 F.3d at 469). Yet, even with these factors guiding the review, the Third Circuit has noted that "the determination depends on 'all the facts in the particular case.'" *Real Estate Mortg. Network,* 748 F.3d at 149 (quoting 29 C.F.R. § 791.2(a)). Further, the Third Circuit has found that the procedural posture of the case impacts this determination. *Real Estate Mortg. Network,* 748 F.3d at 149 (cautioning that the court's "assessment rests heavily on the procedural posture of this litigation. Thompson, a low-level employee with each of the defendant companies, has had no opportunity for discovery as to payroll and taxation documents, disciplinary records [etc.]").

Here, Plaintiff claims that Defendants share a "joint employment" relationship. To that end, the FAC alleges that Defendants "comprise a single, joint and/or integrated business that share[sic] common overlapping management, resources, operations, financial controls and are[sic] based from the same physical location" in Edison, New Jersey. FAC ¶ 6. Outside of the claim that Defendants share the same location, the remainder of the allegations are conclusory. As to Defendant 712 Broadway, the FAC asserts it operates the apartment complex, Westwood, where Plaintiff worked. The FAC also alleges that 712 Broadway "physically employed Plaintiff." *Id.*

8

It is not entirely to the Court what the FAC means by "physically employed." Minimally, Plaintiff appears to have performed all his labor at Westwood, and the FAC may be indicating that 712 Broadway actually hired Plaintiff. As stated above, under the FLSA to "employ" means "to suffer or permit to work." 712 Broadway allowed Plaintiff to live and work at Westwood as a building superintendent. Thus, at this stage, it appears that Plaintiff has plausibly alleged that 712 Broadway was an employer of Plaintiff.

However, Plaintiff has not alleged that as an employer, 712 Broadway is liable for the misconduct alleged in the FAC because the FAC does not delineate which Defendants took what actions. And the FAC fails to plausibly allege that Defendants Kahane or Ster Developers formed a "joint employment" relationship with 712 Broadway. As to Ster Developers, the FAC alleges that it is a corporation, primarily engaged in employing maintenance workers to perform commercial or residential construction. FAC ¶ 8. The FAC, however, does not indicate that Ster Developers employed Plaintiff, much less employed him to perform specific tasks. Further, the FAC alleges that Ster Developers directly paid Plaintiff and that Plaintiff was also considered Ster Developers' employee. *Id.* Yet, it is not clear to the Court from these allegations, how much involvement Ster Developers had in Plaintiff's employment beyond sending direct deposits into his bank account. While compensating Plaintiff fits within the second factor of the *Enterprise Test*, the FAC does not provide further allegations suggesting an employment relationship. *See Real Estate Mortg. Network*, 748 F.3d at 149 (holding that the district court may have been "correct" in not finding a "joint employment" relationship "if one considers only the name of the payor appearing on [plaintiff]'s pay stubs. But [plaintiff] alleges more. The Amended Complaint states that an employee of [defendant] conducted Thompson's training . . . indicating that [defendant] had at least some authority to 'promulgate work rules and assignments'").

9

The FAC does not allege whether Ster Developers hired and/or terminated Plaintiff. In fact, the FAC does not indicate which entity supervised Plaintiff's daily work or from which entity Plaintiff requested compensation and tax information. The FAC does not sufficiently allege a "joint employment relationship" as to Ster Developers. The Court is cognizant of the stage of the proceedings and that Plaintiff has not yet had access to discovery, but Plaintiff knows who hired him, who fired him, who directed his work, who he dealt with on a regular basis, to whom he made his requests and complaints, and who told him to vacate his apartment. Yet, mindful of this case's procedural posture, the Court will allow Plaintiff to file a Second Amended Complaint clarifying Ster Developer's employment relationship to Plaintiff.

Similarly, Plaintiff has not alleged that Defendant Kahane is part of a "joint employment" relationship with 712 Broadway. Plaintiff alleges that Kahane is "an owner, principal, agent, general partner, high-level operations manager, executive, and overseer of the operations" of both 712 Broadway and Ster Developers. FAC ¶ 11. Specifically, Kahane is the alleged "Managing Member" and registered agent of Ster Developers as well as, the "General Partner" and registered agent of 712 Broadway. *Id.* 12-13. Given that the Court found the FAC did not plausibly Ster Developers shared a "joint employer" relationship with 712 Broadway, it follows that Kahane does not share a "joint employer" relationship with 712 Broadway vis-à-vis Kahane's role at Ster Developers.

Thus, the issue becomes whether Kahane's role as the "General Partner" and registered agent of 712 Broadway makes him liable as a joint employer of Plaintiff. The FAC states that "upon information and belief" as part of Kahane's role at 712 Broadway he "oversaw payment to employees" and "oversaw the terms and conditions of employment for employees such as

Plaintiff." Further, "upon information and belief" Kahane was "personally involved with any adverse decisions concerning Plaintiff," including his termination. FAC ¶ 11.

The Third Circuit has ruled that it is permissible to plead based upon information and belief "'[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations and '[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). Nevertheless, courts within this district have dismissed "upon information and belief" pleadings in the context of the *Enterprise* test. *Wang v. Saker Shoprites, Inc.*, No. CV162443, 2017 WL 380911, at *5 (D.N.J. Jan. 26, 2017) (granting the motion to dismiss because "Plaintiffs plead, '[u]pon information and belief,' boilerplate and conclusory allegations by merely restating the elements of the *Enterprise* test").

Kahane's role as to 712 Broadway is a closer call because it alleges that Kahane was the general partner of the entity. However, the FAC does not state that Kahane took any direct action as to Plaintiff. *Cf. Acosta v. Bristol Excavating, Inc.*, 297 F. Supp. 3d 523, 534 (M.D. Pa. 2017) (observing that a corporate officer who exercises operational control can be an employer for FLSA purposes and noting that a defendant was liable when he was the president and sole owner of an entity with responsibility for all hiring, and firing, and employee payments). The Court finds that the FAC's "upon information and belief" pleadings are insufficient because they merely make broad, conclusory allegations. For example, the FAC does not allege that Kahane directly managed Plaintiff or that Kahane was the individual who told Plaintiff he was being terminated. In fact, the FAC fails to indicate that Plaintiff even knew who Kahane was during the time of

11

Plaintiff's employment. However, as noted above, Plaintiff may file a Second Amended Complaint clarifying Kahane's employment relationship to Plaintiff.

Thus, the Court finds that the FAC fails to plausibly allege liability as to each Defendant. The FAC is dismissed without prejudice.

### B. The Amended Complaint's Statutory Claims

In addition to objecting to the FAC's group pleadings, Defendants argue that the FAC misconstrues the pleading requirements for several statutes as a matter of law. The Court touches upon those statutory arguments now for the benefit of both parties because Plaintiff is being permitted to amend his Complaint.

1. Negligence *Per Se* (Count IV)

Defendants argue that to plead a negligence *per se* claim,[3] Plaintiff must identify a specific statute that Defendants' allegedly violated. Def. Brf. at 10. Plaintiff argues that the FAC "explicitly states" two such statutes: the New Jersey Child Support Program Improvement Act ("CSPIA"), N.J.S.A. 2A:17-56.7a *et seq.*; and the New Jersey Child Support Collection Reform Act ("CSCRA"), N.J.S.A. 2A:17-56.27 *et seq.*. Defendants respond that neither statute provides Plaintiff with a private right of action against any of the Defendants. Def. Brf. at 9. In support, Defendants point the Court to *Stianchi v. New Jersey Dep't of Human Servs.*, No. A-2360-09T1, 2011 WL 903385, at *7 (N.J. Super. Ct. App. Div. Mar. 17, 2011).

Under New Jersey law, "a claim of negligence *per se* is supported by the violation of a statute or regulation, but only when that statute or regulation "serve[s] to impose direct tort liability

---

[3] The Complaint also combines negligence and negligence *per se* in a single count. If Plaintiff intended to assert two separate counts, he should do so in his amended complaint. Moreover, if Plaintiff intends to bring a separate negligence count, he must clearly indicate the alleged duty that Defendants owed to him.

12

on [the person who offends it.]" *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017) (quotation omitted) (finding that plaintiff "has failed to allege the existence of such a statute or regulation" and, therefore, the question of whether the New Jersey law in question provided a remedy in tort was not properly before the court). Here, the FAC claims that Defendants are liable for negligence *per se* because of violations of CSPIA and CSCRA.

In *Stianchi*, the New Jersey Appellate Division addressed whether a plaintiff had standing to bring an action against a state agency for its alleged failure to maintain accurate records of the plaintiff's child support payments. 2011 WL 903385, at *3. The Appellate Division found that plaintiff lacked standing. *Id.* Relevant here, the court specifically found that the plaintiff "lacks standing to enforce an individual claim under *N.J.S.A.* 2A:17-56.58." *Id.* at *7. Further, the court went to reject the plaintiff's "argument that the legislative history behind the New Jersey Child Support Program Improvement Act . . ., N.J.S.A. 2A:17-56.7a to 56.25 supports his claim to a private cause of action." *Id.* Looking to the legislative findings of the CSPIA to discern its purpose, the Appellate Division found that the "language evinces a legislative intent to improve the efficiency of the system and not to provide a private cause of action to non-custodial parents." *Id.* at *8.

While the *Stianchi* court's analysis is not a binding interpretation of New Jersey law,[4] it is persuasive authority. The Court agrees with the Appellate Division that the legislative language

---

[4] Non-precedential decisions of the New Jersey Appellate Division are not binding precedent under New Jersey law. *See* N.J. Court R. 1:36-3 (2018); *Badiali v. New Jersey Mfrs. Ins.*, 220 N.J. 544, 559 (2015); *Guido v. Duane Morris LLP*, 202 N.J. 79, 91 & n.4 (2010). Moreover, even if the Appellate Division opinion was precedential, this Court is not mandated to follow it. *Polizzi Meats, Inc. v. Aetna Life & Cas. Co.*, 931 F.Supp. 328, 340 (D.N.J. 1996) ("This court is guided, but not bound, by the rulings of the lower New Jersey appellate courts, which may provide 'indicia of how the state's highest court might decide' an issue.").

surrounding these statutes do not support finding a private cause of action for non-custodial parents. Therefore, Plaintiff may not assert his negligence *per se* claims based on violations of CSPIA or N.J.S.A. 2A:17-56.58 of CSCRA.[5] If Plaintiff amends his pleadings and again asserts a negligence *per se* cause of action, he must set forth an appropriate statute or regulation.

    2.    New Jersey Landlord Reprisal Law and Anti-Eviction Act
          (Counts V and VI)

Defendants argue that Plaintiff does not properly allege a claim under either the New Jersey Landlord Reprisal Law ("Landlord Reprisal Law"), N.J.S.A. § 2A:42-10.10 *et seq.*, or the New Jersey Anti-Eviction Act ("Anti-Eviction Law"), N.J.S.A. § 2A:18-61 *et seq.* Def. Brf. at 7. Defendants argue that the FAC fails to allege that Plaintiff was part of any civil proceeding concerning his removal from the Westwood apartment. *Id.* Defendants add that both statutes allow for removal of Plaintiff under the alleged circumstances present here. *Id.* In opposition, Plaintiff states that the "Complaint summarily provide[sic] that Defendants (without written notice) demanded that Plaintiff exit and vacate his residence under multiple legal and non-legal threats as retaliation." Pl. Opp. at 20. Such retaliation, Plaintiff claims clearly violates both Acts. *Id.* at 20-21.

The Anti-Eviction Act provides restrictions on when a lessee or tenant may be removed from his home by the New Jersey Superior Court. N.J.S.A. § 2A:18-61.1. The Act also specifically allows the Superior Court to remove the lessee or tenant when "[t]he landlord or owner conditioned the tenancy upon and in consideration for the tenant's employment by the landlord or owner as superintendent, janitor or in some other capacity and such employment is being

---

[5] The *Stianchi* court found that the entirety of CSPIA did not create a private right of action for a non-custodial parent, but only addressed N.J.S.A. 2A:17-56.58 of CSCRA. While the Court is doubtful that the remainder of CSCRA granted Plaintiff a private right of action, the issue has not been adequately addressed by the parties. As a result, the Court does not reach it here.

14

terminated." *Id.* § 2A:18-61.1(m). Here, Plaintiff has not alleged the requisite Superior Court proceeding. Because Plaintiff has not alleged that any Superior Court eviction proceeding took place, the Anti-Eviction Act does not apply.

Turning next to Plaintiff's Landlord Reprisal Act claim, the Court finds that Defendants have not sufficiently addressed the matter. The Landlord Reprisal Act provides that a landlord may not retaliate against a tenant by serving "a notice to quit upon any tenant or institute any action against a tenant to recover possession of premises, whether by summary dispossess proceedings, civil action for the possession of land, or otherwise." N.J.S.A. § 2A:42-10.10. Here, the FAC alleges that "Defendants demanded Plaintiff exit and vacate his residence within less than a week of his termination from employment under multiple legal and non-legal threats." FAC ¶ 53. The FAC also states that Defendant did not provide Plaintiff with a "written demand and written notice for delivery of possession of the premises detailing the alleged conduct warranting this immediate removal." *Id.* ¶ 54. As the moving party, Defendants have not provided an adequate analysis of the Landlord Reprisal Act as to the FAC to permit the Court to properly rule on their motion. *See Sang Geoul Lee*, 720 F. App'x at 666 ("[W]e will not engage in a freewheeling investigation into New Jersey state law without meaningful briefing on the subject.").

If Plaintiff files an Amended Complaint and again asserts a violation of the Landlord Reprisal Act, Defendants may move to dismiss the claim if they deem it appropriate.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (D.E. 17) is **GRANTED**. The dismissal, however, is without prejudice to allow Plaintiff an opportunity to file a Second Amended Complaint. Plaintiff has thirty (30) days to file a Second Amended Complaint, if he so chooses, consistent with this Opinion. If Plaintiff fails to file a Second Amended Complaint, the dismissal will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: June 8, 2018

John Michael Vazquez, U.S.D.J.